Justice Gordon is not able to participate with us this morning, but he will be joining us in the ultimate decision-making in this case. Call the first case, please. Case number is Janogash, 1326, Bigelow v. Everett University. Step up, counsel. Good morning, Your Honors. May it please the Court, Lauren Bowser from the State Appellate Defender. Counsel, I can't hear you at all. What is your name? Lauren Bowser from the State Appellate Defender's Office. Ms. Brown's Bowser? B-A-U-S-E-R, on behalf of Mr. Peterson. This morning I would like to focus on the trial court's denial of Mr. Peterson's right to self-representation, as well as how the jury instructions in this case did not accurately state the law. And if time permits, I will also discuss the issue of the jury coercion. Do you want any rebuttal time, counsel? Could I have three minutes for rebuttal, please? Three minutes. Your Honors, in this case, Mr. Peterson was denied his right to self-representation on the erroneous basis that the trial court did not believe that he was competent to represent himself in a capital case. Our courts have recognized that the right to self-representation is as basic and fundamental as the right to counsel. If a criminal defendant invokes this right prior to trial, the right to proceed pro se is virtually unqualified. Here, the trial court is only required to make a determination as to whether the waiver of counsel is knowing and voluntary. And our courts have recognized that an inquiry into voluntariness is not an inquiry into the defendant's ability to represent himself. I want to get away from the fact that this defendant waited until the last minute. He mentioned it earlier some months before, but then at the last minute he decided to insist on his right to counsel. Where was the error in the court making a determination that this was only dilatory on his part? The bulk of the request came about a month before the trial, January 14th and 15th. And our courts have held that a defendant's request to proceed pro se is generally considered timely so long as it's made before trial and the defendant doesn't request additional time to prepare. The Ward case and what's been cited in the brief have basically held that any time prior to trial and prior to the jury being in panels, that's a timely request. Counsel, I have a question in regards to the request itself. Throughout the request that the defendant made prior to trial, it was always along with a request for an attorney. So can you address the issue about it being unequivocal or not being unequivocal? Thank you, Your Honor. Courts have generally held that just because a request is contingent upon another alternative, it does not render the request equivocal. The recent case of another division of this court, People v. Gray, that this court granted leave to cite addresses that exact issue. In that case, the defendant was asking the court to allow him to make pro se filings along with retaining counsel or alternatively to let him go pro se. And this court held that when the court said, no, I'm not going to let you do this hybrid representation, it was then duty-bound to treat that as an unequivocal request. Also cited in the reply brief, many jurisdictions have addressed this issue, and courts generally do not find that a request is equivocal simply because it's conditioned on an alternative. But the state is arguing here that he was actually asking for another attorney, not really asking to be representing another attorney. Well, if you look at the actual language he uses, he says, I don't want to go pro se, but if you're not going to appoint me a new attorney, I will. The next time he talks to the court about it, he says, I don't want these attorneys representing me. I don't want to go pro se, but I will. And again, the next court date, he explicitly states that. So you're making this point. I don't want, but I will. And so he's saying what he really wanted was another lawyer, and that he didn't want to represent himself. So isn't that the ultimate in being equivocal? Well, no, because again, when he presented the court with two alternatives and the court said, no, I'm not going to give you alternative one, the remaining alternative was that I want to represent myself. And if you look at the Ward case, kind of the same thing happened in that case. There were six or seven court dates where there was a back and forth between the defendant there and the trial court where he didn't want to go, he didn't want to represent himself. The court said, I'm not letting you fire your attorney. If you want to fire your attorney, the only alternative is to represent yourself. A couple times they talked about it at subsequent court dates, and ultimately he said, then I want to represent myself. And that the Fourth District and Ward did not find that to be equivocal, because ultimately when presented with the issue of do I get a new attorney or do I have to go pro se, that's what the defendant wanted to do. Going back to the request, particularly to the original request, it states a position here that it was actually the court that had asked Mr. Peterson here whether or not he wanted to go pro se, because his request was that he wanted another lawyer. He didn't want the lawyers that he currently had at the time. Can you address that issue? Well, I think the very first exchange about this pro se issue, six months before the trial, he did bring it up as I wanted to fire my attorneys. The court said, well, you know your only alternative here then is to go pro se. You don't want to do that. Fast forward to the January 14th and 15th dates, obviously now the defendant has had time to think about this and he knows what his alternatives are. On that date he didn't equivocate at all. The question is, who raised the issue first? Was it the defendant or was it the court? The defendant, he raised the issue when he realized that was his only alternative. I suppose that the court made it clear to him on the six month out court date that here are your two options. But on the subsequent court dates the defendant came in and said I want to go pro se if you're not giving me a new attorney. That's him raising the issue. I mean, where he got the knowledge that he was allowed to go pro se, I don't know that that's relevant to whether the fact that he knew he wanted to do that. Well, did he ever once ask the court that he wanted to go pro se? Because it appears in the record and based on the briefs that it was always conditioned with I want another lawyer, but if I can't have one then I want to go pro se. And again, this court held last month that that's not equivocal. Well, my question is, weren't all of the requests that he made conditioned with I want another lawyer and if not then I want to go pro se? On the January 15th court date he specifically said I want to go pro se. I don't want to go to trial with these lawyers. I want to represent myself. There was back and forth about whether he was capable of representing himself, how good of a job his lawyers were doing. But he said I want to represent myself on that court date. Denied. Two weeks later on January 28th he raised his hand in court again and said I just want to reiterate I don't want to go to trial with these lawyers. I would rather represent myself. So he made it clear once he knew he wasn't getting a new lawyer I want to represent myself. Did the court ever conduct a hearing to determine whether or not he could represent himself? It did not. Instead of giving the rule 401 admonitions, which it's required to do when faced with a pro se request, the court applied this incorrect standard of determining whether his counsel had been ineffective and whether he could represent himself correctly. So there never was the required rule 401 hearing, which is what the court should have done. And because this request was made over several times, it doesn't make it equivocal in any way where the defendant always stated that if he was not going to be given new counsel he would prefer to represent himself. In addition, your honors, Mr. Peterson is entitled to a new trial where the jury instructions in this case do not accurately state the law for the predicate felon. The Illinois Supreme Court's decision in People v. Washington and this court's decision in People v. McBride make clear that at the time of Peterson's January 2006 indictment, as well as his 2010 trial, the amended version of the armed robbery statute is in effect, which creates two distinct mutually exclusive offenses, armed robbery with a firearm or a dangerous weapon other than a firearm. Here the state charged him with armed robbery while carrying a dangerous weapon, two wits, a firearm. Now the state asserts on appeal, obviously they were charging him with a firearm offense in this case. However, the jury was instructed on dangerous weapon. Now obviously the jurors, as laypersons, did not know that under the law the weapon cannot be a firearm and a dangerous weapon, but they were incorrectly instructed as to the law. It was improper to instruct the jury on this one mutually exclusive offense when they were actually trying to charge him with something else. Furthermore, the instructions fail to make clear that the property that was taken from the decedent had to be property other than a motor vehicle. The Supreme Court has made clear that there is no such offense as non-robbery with the taking of a motor vehicle. The state here now leads the vehicular hijacking charges prior to sending the case to the jury, and therefore the jury was required to know that the car couldn't be the basis for the taking of this case. So isn't this just harmless error then? Well, our Supreme Court has recognized in People v. Lewis and People v. Davis that failure to give proper instructions on the elements of offense is a critical error. So here the jury was debating, they weren't even given proper elements. They didn't even understand the nature of the offense here. So when they're wrongly instructed as an element, that can't be harmless. And substantial defects in jury instructions can't be waived. It is well established in Illinois that proof beyond a reasonable doubt of the underlying elements is necessary to sustain the conviction for felony murder. So here where there was two major errors in the jury instructions that just simply failed to recognize the changes in the law, the jury was not properly instructed on critical elements of the offense. Our courts have made clear that when the instructions do not accurately state the law, the IPIs can be modified, and it failed to do that in this case. I see that I'm out of time, so I will reserve three minutes for rebuttal. Good morning, Your Honors. I'm Assistant State's Attorney Whitney Bond, representing the people of the state of Illinois. With regard to the pro se issue, it's important to point out that just over three and a half years after the indictment and five months prior to trial is the first time that we hear this type of statement. It's also important to note that from that September 2009 date, the state's attorney, Judge Hines, said, I would like a new attorney, when Judge Hines states, I'm not going to give you another attorney, your choices are you can hire private counsel or you can go pro se. He says, I'd rather have another attorney, but I'll go pro se if I have to. And that's a common refrain throughout the rest of the court dates. In fact, he was also present on a November court date in 2009 when this trial was set for February of 2010. None of those court dates did this defendant bring to the judge any sort of complaint, again, about either the deficiency he perceived with his representation, or the fact that because he is unhappy with them, he would like to proceed pro se. What about the request with regards to the issue of it being clear and unequivocal? I think what's most important to take away from this is we have to look at the totality of the proceedings and the circumstances. At no time does this defendant make a request that we see in some of the other cases where courts have found that a defendant did make a request. I want to discharge my attorneys and I want to represent myself pro se. As Justice Reyes was pointing out, there was always this conditional sort of discussion between the defendant and the trial court that said, I don't like them. And when Judge Hines inquired further, he was able to elicit a lot of information about that. You don't communicate, they don't read discovery to me, they didn't bring discovery to me. There was a whole regime of problems that this defendant had with his attorneys, which is fine, he has problems with them. But what's not fine is that at no point does he, in some of the cases that have been cited in our briefs, does he ever file a motion or a letter that says, I'm unhappy, I don't want them representing me. He never does that in this case. He just simply says, if you won't give me another attorney, I want to represent myself pro se. So is it significant that his request was an oral request instead of a written request? It's not so much significant in that, you know, had he made an unmistakable demand orally, then we probably wouldn't be here on this issue. I mean, I think what we need to look at is there's a slew of ambiguity in this record about what this particular defendant's intentions were. And whether or not, I mean, the reason why we have the standard that we have. Why wasn't the defendant between a rock and a hard place and really without a choice here in light of the fact that he did not think that the counsel that he had were favorably disposed toward him? In fact, he kept arguing that they had said that he was going to lose in, what was it, 99, 95? Some of the likelihood of losing the case or being found guilty. And so he's saying, all right, well, this is not an alternative. So my only other alternative, you know, is to represent myself, something I don't want to do, but something that I'm forced to do because I don't have an option, because the court has not given me an option. So why is that equivocal? That's his rock and his hard place, is that what you're saying? Indeed. Or equivocal, to use the language of the vernacular of the court. I think he recognizes that the court is telling him, you know, you're not going to get another attorney on this. And he's saying what it seems to be, and reading this together, I mean, I don't think that we can take any one court date and put it in a vacuum and then make the decision. Reading all of these court dates together, he's recognizing that this is a difficult case. And he recognizes, I really don't want to do this. This is a capital murder case at the time. And that if he doesn't want to do it, but he really wants to get rid of his attorneys, then he should have said it. I don't want to do this, but I'm going to do this. And he never does that here. And I think the problem with this type of case in general is that when we are looking at them on appeal, the reason why courts before us have said the requests have to be unequivocal, and we have to make sure that he unmistakably demands is so that we're not here, and we're not in this position. I have a question. Brewer, in our country's highest court, said that the courts must, you know, make sure that we're not in this position. We must give a reasonable presumption or indulge in a reasonable presumption in terms of a request to represent oneself pro se. Did this court grant Mr. Peterson every reasonable presumption, given the fact that it appears that it wasn't totally just one question, but it was actually, if I don't have an attorney, then I'm going to go pro se? I think Judge Hines, in this case, was more than reasonable in granting presumptions to this defendant as far as trying to explain to him the importance of what he was about to undertake. And I think a lot of that back and forth with the court and the defendant was trying to impress upon him how difficult this would be to go pro se. And then in that, what's important to note here that Judge Hines also did was he made a finding that this was dilatory. That in his conversations with the defendant, he's recognizing that a lot of these problems that this defendant is perceiving that he has with counsel are actually brought upon himself. When he gives counsels, all three of them, opportunity to, at length, I mean, this goes on for pages and pages in the transcript, to discuss what they've done with him and what, you know, defendant thinks they perhaps should be doing. In that regard, it becomes clear to Judge Hines that, you know, this is on the veritable eve. This is the month before his trial and that this is being done because now he's facing a capital murder case and he wants to stall this as much as possible. And so Judge Hines, within his purview of his court, of the court, he makes that finding that this has been, this is dilatory. And what about counsel's argument that the trial court used the wrong standard here with determining whether or not he was actually waiving his right to counsel? I mean, I think what we're talking about here, when a defendant is requesting go pro se, I think the standard is generally, is it clear and is it unequivocal? The court here is faced with a defendant who's saying over and over and over again through four court dates and five-month period of time, right? Before trial, I don't like my attorneys. They think I'm going to be found guilty. I don't want to go to trial with them. And the reason Judge Hines realized that these attorneys most likely told him that he's going to be found guilty is because they're focusing on mitigation at that point and the mitigation witnesses. So Judge Hines is recognizing that these attorneys are doing the best they can for this defendant and that this defendant's complaints about them aren't really requests for him to go pro se, but really requests to be represented by somebody that he likes better, that believes in him. And in fact, I think you can really read into this defendant's mindset in that he doesn't know what he wants. When he's asked specifically, what do you want? At one point he states, I want to go home. So I think what we have here and what the people would contend is that this case is very different than Gray, which is the case that counsel cited in the motion for additional authority. There at the outset, that's also a post-conviction matter in which the Post-Conviction Hearing Act specifically contemplates that a defendant, a defendant, should start as a pro se litigant. And in that case, what happened was he wanted his pro se claims heard. And when it became clear that the defense counsel was not going to adopt those claims and get them heard, then it was very clear at that point that he had no other choice but to discharge his counsel and then go pro se. There's nothing conditional about that. Because at that time, he had no other choice. He knew he had no other choice. And he wished to make that choice. I still don't see how you get past Ward or how you get past Woodson or even Ferreira. Well, with regard to Ward, Your Honor, the defendant there filed a motion to discharge his counsel. Let's go back to Justice Gray's point. Are we, you know, is there more, is it because he filed a motion better than making the oral request? I'm not saying that. What I'm saying is that his request was pretty clear when he filed the motion. I mean, that in and of itself is not something that a conditional, I might want another attorney, I'll go ahead and file this motion. So on that regard, that's very different in Ward. But also, too, the court in Ward made a specific finding that this, that defendant couldn't represent himself. That was the finding. So the court in Ward said, this judge used, that was the wrong standard. That judge used the wrong standard. He was talking about, he was focusing on the defendant's legal acumen as opposed to a defendant's mental capacity. So is that what this court is focusing on? It's a capital case, it's complicated, you know, that he really didn't want to do that. He is, I don't think he's focusing on it as much as he is trying to impress upon this defendant and not making, you know, any kind of impression. In all four of the court dates where the defendant brings it out, you know, I would like a new attorney, I'd like to, if you won't give me one, I'll represent myself. Did the court ever inquire into Mr. Peterson's education? This court? He did. He asked him if he has been, I believe he asked him how far he went in high school and I think he said he was a sophomore. What about his understanding or knowledge of the legal process? He went through with him so far, and I hesitate to say yes or no to that question because I don't want to say something that's not in the transcript, but he does go through with him the evidence in this case. Like, do you know that this person is going to testify against you? Do you know that this statement is going to come out and the defendant says, yes, I'm aware I was in court, or I tried to have that redacted on the state. So in the back and forth exchange it would seem that Judge Hines has kind of inquired into the defendant's capabilities, but that's in the overall process of trying to show him, look at what all your attorneys have done for you, look at all the motions and liminates they've filed, look at all the witnesses they've tried to procure, look at all the depositions they've tried to find witnesses to, you know, it's in that sort of vein. So the court did inquire after every request? No, no. Specifically, September, the September date was the first date that we talked about it. The defendant says, I don't like my attorneys, I want a new one, I don't want to represent myself, but I will. January 14th is much the same, the court does tell him it's a capital case and goes over the defendant's background, but the bulk of the conversations come on that January 15th date. And therein is where the court, as Justice Hall was saying, specifically applies to Ward, in that the court was specifically talking about the defendant's ability. But what my point was in Ward was that that was the only finding that the court made, and that was what the reviewing court said, the trial court's errors, that that was the only finding that he, and they used the wrong standard to determine whether or not this defendant should be represented pro se. So in Ward you have an unequivocal opinion. So in this case, where is the evidence that this was an intelligent and knowing waiver on the part of the defendant as required by the cases? As opposed to an examination of his legal expertise. I think first you have to find the waiver. I mean at this point he's still not unmistakably demanding that he be able to go pro se. But there is no issue, there's no finding on the court's part that I find you can intelligently waive. Basically the findings that are made is this is being done for dilatory purposes. So we can parse out specifically how this sort of analysis flows. Did the defendant unmistakably demand? Was it clear and was it unequivocal? That obviously is ambiguous. Whether or not the trial court made a finding specifically as to this defendant's legal acumen, he doesn't state on that January 15th date, this is a capital case. Did the court ever specifically ask Mr. Peterson to state his reasons why he wanted to represent himself? I don't believe he asked that question specifically. Why do you specifically want to represent yourself? I think it's more in the vein of what's the problem here? These are good attorneys, they've represented you for almost four years by the time trials are rolling around. What issues do you have with them? I think that's where that comes in. Going back to Gray, I don't know that I actually finished my point on that. But that was an example of a defendant who, there was a specific point in time where he was not going to be able to get his pro se claims heard. And at that point he stated, I want to go pro se, which behooves him. Because if he doesn't do it at that point, then all of his pro se claims are waived for successive PC's. So really he knows he has no choice at that point. It's very, very different than here, where this defendant is simply vacillating back and forth between, I don't want to represent him, but I don't want to go pro se, but I will. Or I want to represent myself if he won't give me another return. And I think what's important to take away is that if Judge Hines had granted this pro se request, then we very well could be here again on appeal arguing where was the unequivocal request. And I think that's an important takeaway from this, when we talk about the overall context of the proceedings, and the overall ambiguity that was expressed by this defendant, and the lack of an unmistakable demand to represent himself. The defense raises the argument that the request was made early enough that there would not have been a delay. That the court could have just as easily granted Mr. Peterson's request to go pro se. And I would argue that how would it not create a delay? It depends on what date, too. Counsel wants to say that he first made it unmistakable. So if you're talking about September, or you're talking about that January 15th date, where they really get into the meat of the discussion. I don't even think this defendant knows how to represent himself. He admits that he doesn't know how to represent himself. So we know how much delay is going to be affected by it. Essentially what you have is a capital murder case that this defendant is going to try to defend himself. And he's going to say, okay, I unmistakably demand to go pro se, and I'm going to be ready by the trial court date within a month. I think it's unrealistic to say that just because he didn't say, I want to go pro se, and I don't need any more time, that that is a harbinger of anything. Is his conduct after the last request is made and the court denies it relevant in this trial at all? His conduct? Yes, afterwards. You mean after the court makes his final denial of his request to go pro se? It's relevant in that it supports the judge's finding that this was dilatory. How so? Well, in that this defendant is never stating to the court anything that is specifically wrong with his attorneys other than he just doesn't like them. And the judge goes through this page for page and page and page of transcript. And I think that the fact that the judge does indulge him in these series of complaints is clear on the record that we can read that this judge gave this defendant a lot of opportunity to discuss what it was that was wrong. And it becomes clear, as it does to Judge Hines in that January 28th date, that this isn't about some attorneys who are falling down on the job. This is about a defendant who doesn't like them and simply just wants something different to happen. Whether or not it be a new attorney, which he's accepting of, or going pro se, he doesn't even know. He just knows that he doesn't like these attorneys. He doesn't think they believe in him, and he doesn't want them representing him. Do you want to address the jury instructions issue? I do, Your Honor. It's kind of a hybrid sort of issue. What counsel is talking about is essentially how we charged armed robbery in the indictment, and then later how the felony murder instructions come down. In the indictment, this defendant was charged with 35 total counts, one of which was armed robbery. We charged a dangerous weapon to wit, a firearm, which at the time we charged it, there was no objection to. Counsel had four years between indictment and trial to object to the language that was in the armed robbery indictment. They didn't object to it. In fact, they filed a motion to dismiss the indictment on completely different grounds, challenging the constitutionality of the firearm enhancement itself. Clearly, any sort of challenge to the indictment itself has been waived. But also, what you're talking about is a defendant who is well apprised of the charges against him, and that's what Washington speaks to. Washington is basically telling us that during the time that this was charged, there was a whole area of law that was in flux between Moss and Walden and Sharp, and this area wasn't settled until 2007 when Hosschild came down. And what Washington says is that we can't expect exactitude in a document from attorneys when the courts at the time didn't even know what was going on. So with regard to the indictment itself and the armed robbery, it was properly charged because this defendant... Counsel, isn't it? There's a rule, right, that says that even if you haven't objected, that you cannot actually waive... I mean, that the failure to make a timely objection would not cure a substantial defect in an instruction. Yes, but my point is... And so why is that not applicable here? Well, I think what we're talking about, though, is different, I think, what Justice Reyes was talking about when counsel was up here. It was about a harmless error sort of analysis. But with jury instructions, if a jury instruction is not objected to, or is an instruction offered by opposing counsel, then there is a waiver component, and then we discuss it under plain error, not harmless error. And in that regard, we can't say that this is actually a structural error, especially where the substantive offense that was charged here was felony murder. And the definitional instruction that went along with that was basically the armed robbery definition. So when we talk about whether or not the jury had an issue with the instructions in general, we can honestly say they were properly instructed. The charge here was felony murder. They were given a felony murder instruction. And everything else is, at that point, cured in that regard. But the argument is that the error was because the instruction didn't tell the jury that the robbery statute excluded the taking of a motor vehicle. And that's what they're arguing was the error. Well, I think that's easily dispositive on the fact that the people proved that this defendant took more than just the car. And there was specific evidence heard from the defendant's own statement that said he took property from the victim. They took their clothes. They took his things. They took his wallet. They took his money. They took his cell phone. They took his radio, in addition to taking the car. So when we give an instruction that excerpts out. So you're saying because they took not just the car but these other goods, that still justifies the armed robbery. It was a proper instruction. Inclusion. It's the people's position that it was a proper instruction. First of all, it's proper because that was the evidence that we proved. We didn't prove that he just took the car. We proved that he took personal property as well. So the armed robbery instruction that this defendant had no problem with, never asked for a non-IBI instruction to mirror the statute. And the fact that this is just a definitional instruction to supplement the substantive offense here, which is felony murder. It's the people's position that there was no issue whatsoever with this instruction. The jury was properly instructed. Wouldn't that have caused the jury to have been more misled if it's just a definitional instruction because they're relying on the court providing them with the proper definitions of what's applicable to the case at hand? I don't think that it would be more confusing to, if you put in except a motor vehicle, they're still in the same spot that they were based on the evidence. The evidence shows specifically that this defendant stole all of these personal, and it wasn't he just stole all personal effect that maybe gets lost in translation. He stole specifically and talked about the money that he took from this victim and how he used it to buy a Butterfinger to break change and get on the bus and then go home and order pizza and jeans and that it wasn't nothing. So clearly this was the things that he stole from this victim were made clear, were punctuated by the state, and that jury instruction accurately describes what this defendant took in this case. How much of your time has expired do you need to conclude? For these reasons and those that we've included in our brief, we ask that you affirm the defendant's conviction and sentence. Thank you. Rebuttal. Your Honors, I would just like to clarify, you know, this idea that Mr. Peterson never made an equivocal request. January 15th, NN3 of the record, Peterson tells the court, I've met with my attorneys, and if you are not going to appoint me a new counsel, I would like to go pro se. The court has a back and forth with him and denies that. The court says, request to represent yourself or in the alternative to get a new counsel denied. Mr. Peterson responds, why are you denying that? I'm not denying my request to represent myself. I thought it was my right to represent myself. At that point, how can it be unclear that this defendant is asserting his right to self-representation? And I'd just also like to point, you know, to the Fourth Circuit federal case cited in our reply brief where the court notes that every federal circuit to consider the question has come to the conclusion that requesting self-representation as a fallback or an alternative to a request for a new counsel does not render that request equivocal. Which does not render what? I'm sorry, the request equivocal for purposes of Veretta. And, you know, counsel spoke a lot about how, you know, the court asked Mr. Peterson what his attorneys had done and, you know, to show him what good job they'd done in this case, but there's no requirement that a defendant prove that his attorney was ineffective prior to exercising his right. That's simply not the inquiry. It's whether it was knowing and voluntary as, you know, laid out in Rule 401. Furthermore, this, you know, notion that this could delay the trial, Mr. Peterson did not request additional time. Motion and liminese are still being litigated. If the state was still attempting to locate a key witness, potentially a key witness, with no request for additional time a month before trial, the state cited no case that's found that that would be too late in the proceedings. All of the cases that, you know, discuss this issue would say as long as it's made before trial, before the jury's impaneled. And just briefly on the second issue, you know, the instructions in this case did not, you know, inform the jury that you can't take the card. This case centered around carjacking. And it's not simply, you know, a reasonable doubt argument. The fact that there was evidence that other things were taken, that's what the state's case is about, the car. And, you know, Mr. Peterson was entitled to a jury verdict on that fact. So it's not simply a matter of was there some evidence. It's whether they were correctly instructed. Was Mr. Peterson informed of the dangers and the disadvantages of proceeding pro se by the trial court? Yeah, the trial court, you know, obviously, I think here, didn't want to have to deal with a pro se defendant in the capital case and was attempting to make him aware of why that would be a bad idea. You know, as Ward has recognized, it's perfectly acceptable for a trial court to do. However, they are bound by what the defendant decides. And, you know, they can't take the jurors. I'm sorry, they're bound by what? What he decides. You know, they can warn him of the dangers, but they can't, you know,  If he decides to go forward anyways, you know, the court is bound by that decision by the defendant. Even in a capital case. Thank you, Your Honor. This matter will be taken under advisement. This court is adjourned.